UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IVIN ROMON RICHARDSON,
Inmate No. P03443,
　　　　Plaintiff,

vs.                                                   Case No.: 3:19cv2974/LAC/EMT

SHERIFF DAVID MORGAN, et al.,
　　　　Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF Nos. 1, 5). The matter is before the court on Plaintiff's second amended complaint (ECF No. 23). The court is statutorily required to review the second amended complaint to determine whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A. Upon review of the second amended complaint, it is apparent Plaintiff has failed to state a viable claim for relief despite having had two opportunities to do so. It likewise is clear Plaintiff cannot cure the deficiencies by filing a third amended complaint. *See*

*Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003) (Generally, "a district court must grant a plaintiff at least one opportunity to amend their claims [as the court did here] before dismissing them if it appears a more carefully drafted complaint might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend.") (internal marks omitted).   The undersigned thus recommends the case be dismissed for failure to state a claim upon which relief can be granted.

## I.     BACKGROUND

Plaintiff initiated this action on August 6, 2019 (ECF No. 1 at 33).  His initial complaint exceeded the page limit permitted by this court's local rules, so the court instructed Plaintiff to file an amended complaint (ECF No. 6).[1]  Plaintiff did so, and after performing its statutory screening function of the amended complaint, the court determined Plaintiff failed to state an actionable claim and thus directed Plaintiff to file a second amended complaint (ECF Nos. 7, 8).  Plaintiff did so, and the second amended complaint (ECF No. 23) is now the operative pleading.

---

[1] Due to the length of the complaint, the court did not screen it to determine whether it was subject to dismissal as frivolous or malicious, for failing to state a claim upon which relief may be granted, or for seeking monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

Although an amended complaint replaces any earlier complaint, N.D. Fla. Loc. R. 15.1(A), allegations from the original and amended complaints (ECF Nos. 1, 7) are included herein in order to provide context for Plaintiff's somewhat scattershot assertions.   The court will then set forth in detail the allegations in the operative complaint.

In Plaintiff's initial complaint, filed August 6, 2019, Plaintiff primarily complained about inadequate law library facilities and materials at the Escambia County Jail (Jail); he asserted secondary complaints relating to the Jail's grievance procedures (ECF No. 1).   Plaintiff contended he needed research materials in connection with violation of probation (VOP) proceedings (ECF No. 1 at 7–8). Plaintiff noted he was incarcerated in the Jail on March 27, 2015, on "several charges"; he had a VOP revocation hearing on January 22, 2016; and he was released from the Jail on April 15, 2016, upon the State's dismissal of the VOP affidavit (ECF No. 1 at 10; ECF No. 7 at 7).   Plaintiff alleged the VOP affidavit was "refiled," and he was incarcerated again on April 28, 2016 (ECF No. 1 at 10).   He stated he was convicted of the VOP on September 29, 2016, and sentenced to 199 months in state prison (ECF No. 1 at 13).   He alleged this conviction constituted a violation of the

Double Jeopardy Clause of the Fifth Amendment (*see* ECF No. 7 at 7).  Plaintiff appealed, represented by counsel.

Plaintiff was rearrested on October 17, 2017, on "unrelated charges" and again incarcerated at the Jail, evidently while his appeal of the VOP conviction was pending (ECF No. 1 at 13).   On February 21, 2018, the VOP conviction was "reversed" by the Florida First District Court of Appeal (First DCA), with directions to resentence Plaintiff (*id.*).   Plaintiff filed a "habeas corpus [petition alleging] ineffective assistance of appellate counsel" (IAAC), based on counsel's decision to pursue a claim relating to Plaintiff's sentence but not a claim based on double jeopardy grounds (ECF No. 1 at 14).  Plaintiff claimed that due to inadequacies in the Jail's law library, he was unable to "develop" his IAAC and double jeopardy claims (ECF No. 7 at 7).  The First DCA affirmed Plaintiff's  conviction and denied the petition (ECF No. 1 at 15).

In the second amended complaint, Plaintiff names nine Defendants— Escambia County Board of Commissioners, Sheriff David Morgan, Escambia County Attorney, Lieutenant Walker, Selena Barnes, Ann Gonzalez, and three unidentified Escambia County Commissioners (ECF No. 23 at 1), exactly as he did in the amended complaint (ECF No. 7).  As before, Plaintiff's claims stem from his

arrest and conviction for a VOP in 2016.[2]  Plaintiff complains of lack of access to the courts due to lack of access to adequate legal assistance and materials and the ability to file grievances regarding same while confined in the Jail.[3]

Specifically, Plaintiff says he filed motions to dismiss based on allegedly false statements made by Probation Officer Beck but required caselaw to support the motion, although he does not clarify whether he is referring to the first VOP proceeding—in which he was acquitted—or the second—in which he was convicted (*see* ECF No. 23 at 7).  He also claims he needed caselaw to support a motion for post-conviction relief, presumably referring to one or more habeas actions in which he raised IAAC or double jeopardy claims (*see id.*).  He claims there was no "research menu" on the kiosk at the Jail and that after he submitted a request for

---

[2] As alluded to *supra*, Plaintiff's allegations are vague and confusing, at best.  In a related case Plaintiff filed in this court assigned to the undersigned, Case No. 3:18cv2004/LAC/EMT, the defendant—Jennifer Beck, Plaintiff's probation officer—filed a motion to dismiss (ECF No. 15) to which she attached various documents pertaining to the alleged probation violation from which Plaintiff's claims in the instant action stem, which provide some clarity as to the facts underlying Plaintiff's claims as set forth in the second amended complaint.

[3] In his Second Amended Complaint, Plaintiff references a proceeding in an unspecified matter held on April 22, 2020 (ECF No. 23 at 7), during which he contends "the state fabricated counts with false information" (*id.*).  Any claim Plaintiff may seek to assert based on such proceeding is not properly asserted in the Second Amended Complaint in this action, as it plainly was not set forth in Plaintiff's initial complaint filed on August 6, 2019 (*see* ECF No. 1 at 33), before the April 22, 2020, proceeding, and there is no indication it is related in any way to the claims asserted in the initial complaint.

research assistance, Defendant Gonzalez, the Jail law librarian, provided him only twenty cases (*id.* at 7–8).

Plaintiff alleges Defendants Gonzalez, Walker, and Barnes are "responsible for law library program connected to inmate kiosk" and that Jail policy, as set forth in the inmate handbook, does not allow staff to assist inmates with research (*id.*). Plaintiff says there is no "active" law library at the Jail and that inmates are required to submit research requests to Gonzalez, whom Plaintiff contends "violated law and the constitution when she employed '20 case search' method and got cases and gave to [Plaintiff] which he used and lost motions with" (*id.* at 7). Plaintiff says the "20 case search never explained or made [him] aware of Shepard's law, statutory law research process, so [he] believed the method used was all there is to legal research" (*id.*).

Plaintiff contends the "Escambia County Jail's Commissioner's [sic] are direct policy makers with Sheriff Department" and that "[t]heir duties are funding for law library and policy making" (*id.*). According to Plaintiff, hiring Defendant Gonzalez as the law librarian when the Jail knew she had no "West law-electronic-process training and would violate constitutional law of inmates needing access to courts to draft meaningful papers" violated his rights (*id.* at 8–9). Plaintiff alleges

the Escambia County Attorney has a "duty to ensure that the law library, which does not exist in Escambia County Jail, is legal standard" (*id.* at 9). And he says it is "[t]he Sheriff's duty . . . to provide law library computers, research West law books, Hornbooks, treatise [sic], assistants to guide inmates through West law but has not" (*id.* at 10).

Plaintiff further avers that "[b]ecause Escambia County Commissioners and the Escambia County Sheriff knew that Ann Gonzalez had no legal research training then they should have provided research reference access to Rule 3.850, 9.141(c), 3.190(c)(4)" and that "[r]eference access would enable [him] to support facts" (*id.* at 9). In failing to do so, Plaintiff asserts, the Commissioners "thwarted [his] ability to access courts," which resulted in the court denying his motions causing him to "suffer[ ] two years prison, depression, loss of liberty, [and] job" (*id.* at 9–10).[4]

Moreover, Plaintiff avers, "[w]hen County Commissioner's [sic] implemented electronic kiosk calling it the law library, they discontinued the paper grievance system for electronic grievance system" despite the fact the "inmate handbook mandates grievances, signed, copy, and answered" (*id.* at 10). According

---

[4] Plaintiff also appears to claim pain and suffering due to the inability to receive "hand therapy," apparently necessitated by a prior gunshot wound (ECF No. 23 at 9).

to Plaintiff, "[t]he electronic kiosk implemented no features to do so" (*id.*).    It appears Plaintiff alleges there was no appeal or grievance coordinator, but he also says Defendant Barnes was "directly responsible for appeals which also cannot be accessed on electronic kiosk, so [he] could no[t] get any assistance from Selena Barnes when [he] filed several grievances to get law library assistance" (*id.*). Plaintiff asserts the "kiosk is insufficient for law library and grievance use because the kiosk connects not to the West law or to grievance coordinator" (*id.*).

Plaintiff's asserts an unspecified claim under the Fourth Amendment, as well as First and Eighth Amendment claims for denial of access to the courts, Fifth Amendment claims for double jeopardy and lack of due process, and a Fourteenth Amendment due process claim (*id.* at 11).    As relief, Plaintiff seeks nominal damages, $350,000.00 in compensatory damages, and $100,000.00 in punitive damages "for being arrested, framed, without warrant" based on a "fabricated affidavit" by his probation officer, Ms. Beck (*id.* at 9, 11).

## II.    DISCUSSION

### A.    Standard of Review

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal marks and alteration omitted); *see also Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). In other words,

> [p]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

The court reads a pro se plaintiff's pleadings in a liberal fashion and holds them to a less stringent standard than pleadings drafted by attorneys. *See Harris v. Goderick*, 608 F. App'x 760, 761 (11th Cir. 2015). Nevertheless, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and

conclusory." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (internal marks and alteration omitted); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits" and courts are not required "to conjure up questions never squarely presented to them").

B.    Plaintiff's Claims

A viable claim under 42 U.S.C. § 1983 requires a plaintiff to establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Here, as set forth above, Plaintiff invokes the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

As a threshold matter, in order to sustain a § 1983 claim, the named defendant must be an entity subject to suit. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). The capacity of a party to be sued is determined by the law of the state in which the district court sits. *Id.* at 1214–15. Plaintiff names as Defendants the

Escambia County Board of Commissioners and three unidentified Escambia County Commissioners.  However, Plaintiff makes no specific allegations against the Board or any of its Commissioners, and "the law is established that county commissioners cannot be held liable for actions undertaken during the daily operation of a county jail."  *Robertson v. Orange Cty. Bd. of Comm'r Off.*, No. 6:18cv219-ORL-40KRS, 2018 WL 10854581, at *1 (M.D. Fla. Apr. 13, 2018) (citing *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998)).  Plaintiff's claims against the Escambia County Board of Commissioners and three unidentified Commissioners thus fail as a matter of law.

With regard to Plaintiff's claims against the Escambia County Attorney, Plaintiff does not specify the capacity in which he sues this Defendant.  To the extent Plaintiff sues the Escambia County Attorney in his or her official capacity, Plaintiff's claims are to be treated as having been asserted against the county.  *See, e.g., Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) (citing *Ky. v. Graham*, 473 U.S. 159, 165–66 (1985)).  To hold a county liable, a plaintiff must show that (1) "his constitutional rights were violated"; (2) the county "had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *Faulkner v. Monroe*

*Cty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) (internal marks omitted).  Plaintiff makes no such allegations.  The only mention of the Escambia County Attorney in Plaintiff's Second Amended Complaint is Plaintiff's bald and conclusory assertion, set forth above, that it is the duty of the Escambia County Attorney to "ensure that the law library, which does not exist in Escambia County Jail, is legal standard" (ECF No. 23 at 9).  For the reasons set forth below, Plaintiff also fails to state a claim against the Escambia County Attorney in his or her individual capacity.

1.    First Amendment

"Access to the courts is a constitutional right that is grounded in several constitutional amendments, including the First Amendment and the Fourteenth Amendment." *Cranford v. Nevada Dep't of Corr.*, 398 F. App'x 540, 546 (11th Cir. 2010).  "In *Bounds* [*v. Smith*, 430 U.S. 817 (1977)], the U.S. Supreme Court held that the 'right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" *Id.* (quoting *Bounds*, 430 U.S. at 828, *limited by Lewis v. Casey*, 518 U.S. 343 (1996)).

"In explaining the importance of providing prisoners with law libraries or other forms of legal assistance, the Supreme Court stated:

> If a lawyer must perform [ ] preliminary [legal] research, it is no less vital for a pro se prisoner. . . .  Moreover, if the State files a response to a pro se pleading, it will undoubtedly contain seemingly authoritative citations.  Without a library, an inmate will be unable to rebut the State's argument.  It is not enough to answer that the court will evaluate the facts pleaded in light of the relevant law.

*Id.* (quoting *Bounds*, 430 U.S. at 825–26).

As the Court also observed, however, "there is no right to a law library or to legal assistance per se, but only 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Juiffre v. Broward Sheriff's Office*, 717 F. App'x 886, 888 (11th Cir. 2017) (quoting *Lewis*, 518 U.S. at 351).  "[T]he Supreme Court clarified that, although prison law libraries and legal assistance programs are 'one constitutionally acceptable method to assure meaningful access to courts,' they are not ends in themselves." *Cranford*, 398 F. App'x at 546 (quoting *Lewis*, 518 U.S. at 351).  "'The inquiry is [ ] whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds*, 430 U.S. at 825).

"[I]n order to assert a claim arising from the denial of meaningful access to the courts, an inmate must [ ] establish an actual injury." *Id.* (internal marks omitted). "Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program." *Id.* at 546–47 (internal marks omitted). Because there is no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.

"[M]eaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "The actual-injury element requires that the plaintiff must identify within his

complaint, a nonfrivolous, arguable underlying claim." *Cranford*, 398 F. App'x at 547 (internal marks omitted). "In other words, the plaintiff must show that he has more than a mere hope of obtaining relief on the underlying claim." *Id.* (internal marks omitted). "In addition, the prisoner must show that his underlying nonfrivolous claim was raised, or would have been raised, in connection with a direct appeal, a collateral attack on his conviction, or a civil rights action." *Id.*

In this instance, Plaintiff alleges that because of a lack of legal materials and assistance, he was unable to adequately prepare a motion to dismiss and motion for post-conviction relief. It is clear based on the facts alleged, however, that Plaintiff had access to legal materials and assistance, availed himself of such access, and, in fact, was able to file motions after being provided legal research he requested. The fact that Gonzalez provided Plaintiff only twenty cases does not in any way indicate Plaintiff was denied adequate legal assistance or access to the courts. And Plaintiff has not alleged facts from which one could reasonably conclude that the result of his legal proceedings would have been different had there been no limitation on the materials or assistance provided to him. Plaintiff has not alleged, for instance, that he requested, but was denied, certain materials that would have changed the outcome of the case. Plaintiff also has not alleged facts from which one could reasonably

conclude he could have had more than a mere hope of obtaining relief on his claims. Plaintiff references double jeopardy, ineffective assistance of counsel, and res judicata, but he does not allege facts showing—or even suggesting—he had a colorable claim under any of those legal theories.

2.    Fourth Amendment

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). "The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest." *Id.* at 1505–06. "Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Id.* at 1506 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (brackets in original)). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information, and probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life." *Id.* (internal mark and citations omitted). The level of proof needed to make a probable cause determination is considerably

less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was lacking. *Id.* at 1507; *Von Stein v. Bresher*, 904 F.2d 572, 578 n.9 (11th Cir. 1990).

As set forth above, Plaintiff's Second Amended Complaint stems from Plaintiff's arrest and conviction for a probation violation. Notably, however, Plaintiff has not alleged any Defendant in this action had any involvement in his arrest. To the contrary, Plaintiff alleges Jennifer Beck and William Harrison, neither of whom is a Defendant in this case, were responsible for his arrest. Moreover, according to the facts set forth in the Second Amended Complaint, Plaintiff's arrest was based on a positive drug screen, which violated the terms of his probation. Hence, Plaintiff's allegations undermine any assertion that probable cause for his arrest was lacking. Plaintiff thus has failed to state a viable Fourth Amendment claim.

### 3. Fifth Amendment

Pursuant to the Fifth Amendment

[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject

for the same offence to be twice put in jeopardy of life or limb; nor shall
be compelled in any criminal case to be a witness against himself, nor
be deprived of life, liberty, or property, without due process of law; nor
shall private property be taken for public use, without just compensation.

U.S. Const. Amend. V.

Here, Plaintiff invokes the double jeopardy and due process provisions of the

Fifth Amendment.  With regard to double jeopardy, Plaintiff has wholly failed to

allege facts demonstrating he was tried twice for the same offense.  And he has not

alleged that any Defendant with the authority to do so prosecuted him.  With regard

to due process, to the extent such claim is based on Plaintiff's alleged lack of access

to the courts, such claim is properly brought under the First Amendment and fails

for the reasons set forth above; to the extent Plaintiff's due process claim is based

on Plaintiff's alleged false arrest, such claim is properly brought under the Fourth

Amendment and likewise fails for the reasons set forth above.[5]  To the extent

Plaintiff's Fifth Amendment claim is based on alleged deficiencies in the Jail's

grievance process, his claim still fails.  Indeed, "[a]n inmate has no constitutionally-

---

[5] If a constitutional claim is covered by a specific constitutional provision, the claim must be
analyzed under the standard appropriate to that specific provision, not under the rubric of
substantive due process. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Booth v. City
of Roswell*, 754 F. App'x 834, 837 (11th Cir. 2018) ("The first step in a § 1983 claim is to identify
the specific constitutional right allegedly infringed.") (citing *Graham*, 490 U.S. at 394).  For the
same reasons, Plaintiff's Eighth Amendment claim regarding denial of access to the courts must
be brought under the First Amendment and fails for the reasons previously explained.

protected liberty interest in access to prison grievance procedures." *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam).

      4.     Eighth Amendment

      The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Plaintiff has made no allegations even approaching an actionable Eighth Amendment claim. He complains he was denied access to hand therapy, but this alone is woefully insufficient to state any constitutional claim—putting aside that the claim regarding denial of medical care is wholly unrelated to the claims and Defendants in this action and thus is improperly asserted. *Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (when pro se prisoner asserts unrelated claims against unrelated defendants, district court may exercise its authority under Rule 21 *sua sponte* to dismiss improper defendants and sever unrelated claims) (citing Fed. R. Civ. P. 21).

      5.     Fourteenth Amendment

      The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt. 14, § 1. Again, Plaintiff's claims of lack of access to the courts and false arrest are properly asserted under the First and Fourth Amendments,

respectively, under both of which they fail.  And to the extent Plaintiff's Fourteenth Amendment claim is based on the Jail's grievance process, Plaintiff has stated no viable claim in that regard for the reasons set forth above.

Finally, in the event the underlying criminal matter is still pending, including on appeal, this court cannot intervene, as federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm.  *Younger v. Harris*, 401 U.S. 37 (1971); *see also Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992).   *Younger* abstention is required when: (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional challenges.  *See id.*; *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003).   An adequate opportunity to raise constitutional challenges exists if "state procedural law does not clearly bar the interposition of the constitutional claims."  *Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1262 (11th Cir. 1997) (internal marks omitted). Thus, if the state proceeding is ongoing, Plaintiff's claims are barred by *Younger* because Plaintiff has alleged no procedural bar to any state court claim.

In the event the underlying criminal proceeding has concluded, Plaintiff's compensatory damages claim is barred by *Heck v. Humphrey*, in which the Supreme Court held that before a plaintiff may proceed with a § 1983 action "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must prove that the conviction or sentence has been somehow invalidated. 512 U.S. 477, 486–87 (1994). If the plaintiff fails to demonstrate the conviction or sentence has been invalidated, any claim must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. Plaintiff alleges he was wrongfully arrested and convicted. He has not alleged, however, that such conviction has been invalidated. And any judgment in his favor necessarily would imply the invalidity of his conviction. *Id.*

## III. CONCLUSION

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" *Id*. "The Supreme Court has explained that a claim for relief must contain sufficient factual allegations to cross 'the line between possibility and

plausibility.'"  *Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "That is, although the district court is bound to 'accept as true all of the allegations contained in a complaint,' this is limited by the rule that 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

"Related to this is the rule that a district court has the inherent power to dismiss an action that is 'so patently lacking in merit as to be frivolous.'"  *Guthrie*, 618 F. App'x at 617 (quoting *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 & n.3 (11th Cir. 1983)); *see also Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008) (affirming district courts' inherent authority to dismiss frivolous claims sua sponte).  "A claim is frivolous if it is without arguable merit either in law or fact."  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing *Battle v. Central State Hosp.*, 898 F.2d 126, 129 (11th Cir. 1990)); *see also Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (noting "a case is frivolous for section 1915(d) [now 28 U.S.C. § 1915(e)(2)(B)(i)] when it appears the plaintiff has little or no chance of success") (internal marks omitted).  In this instance, it is clear Plaintiff has wholly failed to allege facts showing he is entitled to relief on his

claims.    It also is apparent Plaintiff cannot cure the deficiencies by further amendment.  *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Plaintiff's second amended complaint (ECF No. 23) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

2.    That the Clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 8th day of June 2021.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections must be served on all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**